### STATE *v.* GARITY.

To sustain an indictment for keeping a disorderly house, it is not necessary to show that the whole building was devoted to the illegal purpose charged in the indictment.

It is sufficient in such case to show that defendant having the general occupation of the whole building, used one room only for the illegal business, though the rest of the house was used as the residence of himself and family, and though all the disorder proved was caused by what was done or permitted in that one room, and no other part of the house was kept open to the public.

INDICTMENT for keeping a disorderly house.

On trial it appeared that the defendant occupied a two story building on Fleet Street, in Portsmouth. The only outer door of the building on the street opened into an entry, and a door opened from the entry into a room on the ground floor; this room occupied all or nearly all of that story. From the same entry a stairway led up into the second story, which had in it two rooms, in which the plaintiff and his family resided; one of these rooms being used as a sitting room or kitchen, and the other as a bed room. There was no stairway communicating directly between the room below and the rooms above, the communication being by the stairway from the entry mentioned before. The whole building had formerly been used as a dwelling house; but the occupants, for some years before the defendant took possession, had used the room below for a shop, in which some kind of business was carried on disconnected with the other part of the building.

The lower room was occupied by the defendant as a shop or bar-room, and there was a sign over the outer door, which opened into the entry, inscribed, "Porter House." The evidence went to show that disorderly persons resorted to this shop or bar-room and remained there drinking, quarrelling, &c. There was no evidence that any business was carried on in this room, except the sale of liquor and the entertainment of such persons as came there to drink, and except that the defendant was engaged in the business of procuring substitutes for the army and used this room for that business in connection with the other.

The court instructed the jury, that, to maintain the indictment, it was

not necessary to show that the whole building was devoted to the illegal purpose charged in the indictment; that if the defendant had the general occupation of the whole building, but used the bar-room or shop, and no other part of the building, for the illegal business, and the rest of the house was used as the residence of himself and family, the defendant might be convicted, on this indictment, of keeping a disorderly house, though all the disorder proved was caused by what was done and permitted in that room, and no other part of the house was kept open to the public.

The jury returned a verdict of guilty, which the defendant moved the court to set aside, "because the court instructed the jury that the place described in the evidence was sufficiently described and set forth in the indictment; and that if the defendant kept a disorderly shop in the manner described in the bill, the indictment for keeping a disorderly house is maintained."

The questions arising on the case were reserved.

*Attorney General*, for State.

*Hatch*, for defendant.

SARGENT, J.   Defendant objects that the evidence in this case tended to prove a disorderly shop or place of business, and not a disorderly house, and contends that his house was not disorderly, however it may have been with his place of business, and that this apartment, though in the same building in which he lived, constituted properly no part of his dwelling house.

The word "house" is not synonymous with "dwelling house." While the former is used in a broader and more comprehensive sense than the latter, it has a narrower and more restricted meaning than the word "building."

There was formerly a distinction in describing arson and burglary. To constitute burglary the building broken must be described in the indictment as *domum mansionalem*, and it is said that *domum* alone is not sufficient as that is too uncertain, 1 Hale's P. C. 550.   But in describing arson, the building burnt should be described simply as *domum* and not *domum mansionalem* as in case of burglary; 1 Hale's P. C. 567, where it is said that the word *domus* extended not only to the very dwelling house, but to all out houses that are parcel thereof, though not contiguous to it, or under the same roof, as the barn, stable, cow house, sheep house, dairy house, mill house.   But this distinction between *domum* and *domum mansionalem* was not very clearly defined in the old books, as we find these out houses held to be a part of the mansion house in case of burglary as well as of the house in case of arson. Neither is the distinction at the present day between the terms "house" and "dwelling house" or "mansion house" very clearly defined.   1 Bish. Cr. Law, sec. 164 and *seq.*

But if one part of the building is used for abode, it gives the character of dwelling house to every other part, to which there is an internal com-

munication, if the whole is under the control and supervision of the person living in it. 1 Bish. Cr. Law, sec. 167. And it has been distinctly held that if an offence be committed in the part of such house which is not used for habitation, the indictment may charge it to have been done in the dwelling house of him who dwells in the other part, where he has had the control and occupancy of the whole.

Although a man leaves his house and never means to reside in it again, yet if he uses part of it as a shop and lets his servant with his family live and sleep in another part of it for fear the place should be robbed, and lets the rest to lodgers, the habitation by his servant and his family is a habitation by law, and the shop will be considered a part of the dwelling house so as to constitute the breaking thereof, burglary. *Rex* v. *Gibbons*, Russ. & Ry. C. C. 422.

It was also held in *Regina* v. *Peirson*, 1 Salk. 382, "that if a lodger who had only a single room, will therewith accommodate lewd people to perpetrate acts of uncleanness, she may be indicted for keeping a bawdy house, as well as if she had the whole house. S. C. 2 Ld. Ray. 1197.

In Massachusetts the act of 1855 ch. 405, sec. 1, declared all buildings, places or tenements used for the illegal sale or keeping of intoxicating liquors to be common nuisances, and it was held in *Commonwealth* v. *Hill & als.*, 14 Gray 26, that an indictment for unlawfully keeping a tenement known as the "Eagle Saloon," in violation of said statute, is supported by proof of the use of any part of the tenement, as of one room only, for the alleged purpose, though it was shown that the tenement consisted of several rooms.

In the case before us there was a building with several apartments under one roof, with one entrance to it from the street, occupied as a dwelling house throughout, except one room, by the defendant and his family, and this room was also used and occupied by the defendant, but in such a way as to be a public nuisance. Had a burglary been committed in this room, the guilty party might have been convicted of breaking and entering a dwelling house. Had one set fire in that room, it would not only have been the burning of a house at common law, but of a dwelling house, under our statutes, and had this indictment charged the defendant with keeping a disorderly dwelling house, and were that necessary to constitute the offence, the verdict would not be set aside.

In the large class of cases of this kind such as disorderly houses, tippling houses, bawdy houses, &c., it cannot be necessary, in order to constitute the offence, that the whole building, that every room and apartment in it, shall be used for the unlawful purpose. Ordinarily but a single apartment would be used for the purpose of tippling or bawdry or of making disturbance, though the whole might be so used, and the nuisance to the public would be the same whether it was in one room or several in the same house. It would be diffiult to get convictions for keeping disorderly houses in any case upon the ground assumed by the defendant.

*Judgment on the verdict.*